## Butcher v. Clark et al.

*Philip Price*, for plaintiff.

*Abraham Wernick*, Assistant City Solicitor, for defendants.

KUN, P. J., June 11, 1951.—This matter was put on the list for disposition on bill and answer. As pointed out in the preliminary order, filed as far back as February 19, 1951, it was impossible for the court to dispose of the matter because the civil service commission had not made sufficient inquiry into the merits of the cases of each of the 51 city employes who had been dismissed for "political activity" and who, on

appeal by them to the civil service commission, had all been "reinstated". The commission was accordingly directed to make an "immediate inquiry into the alleged political activity of each of the 51 employes involved", and to report thereon by way of an amended answer within 30 days. This was not done within the time indicated, and the amended answer was not filed by the commission until May 3, 1951, wherein it was stated that on an examination of the facts it was found by the commission that as to the 19 of the employes therein mentioned, the charge of political activity on their part had been sustained. Four other employes therein mentioned, having resigned their positions as city employes, the commission reported that their appeals from their discharge had been dismissed. As to a fifth one therein mentioned, the employe having failed to appear for a hearing, the commission dismissed his appeal from his discharge. As to the remaining 27 employes mentioned in the amended answer, all that was stated was:

"The commission has reviewed the testimony taken in the following cases, and finds no evidence therein of political activity on (their) part."

It was apparent that the court could not properly dispose of the cases of these 27 employes on the bare legal conclusions pleaded, so that the commission was again ordered to comply with the preliminary order of the court issued back in February, to report the *facts* in relation to the alleged political activity of each of the employes, so that the court would be in a position to determine whether their cases came within the prohibitory provisions of the Civil Service Act.

The second amended answer of the commission gave a summary of the facts in each case, which should have been filed last March, but was not in fact filed until May 28, 1951, and the matter came on for a hearing before the court on June 4, 1951. This is the

first time that the court has been supplied with such a factual pleading, and a basis on which the court could take proper action.

We find it necessary to repeat in this adjudication part of what we stated in the preliminary order of February 19, 1951, as follows:

"Sections 23 and 25 of Article XIX of the Act of June 25, 1919, P. L. 581, 53 P. S. 3343, 3344, provide in effect for the immediate dismissal of any employee serving on a political committee or who takes an active part in political management or in political campaigns, and that the employee so dismissed 'shall be ineligible for reappointment within two years to any position in the service of (the) City.' We cannot accept the contention made on behalf of the Commission that by virtue of the Act of July 29, 1941, P. L. 579, 53 P. S. 3338, giving the right to the Commission to investigate the basis of discharge of any employee and to reinstate him on consideration of his acts and his record of service, it had the right to reinstate the 51 employees mentioned in the Bill notwithstanding they were all dismissed for political activity. The Act of 1941 is by its terms an amendment of section 18 of Article XIX of the basic Act of 1919, supra, and has to do with derelictions of an employee in the course of his service, and under its terms authority is given to the Commission to review the cause of dismissal to the end that the punishment meted out to the employee may not be too severe. This Act has no relation or reference whatever to the self-executing provisions of sections 23 and 25 of Article XIX above referred to. It is to be noted that section 23 provides for criminal prosecution of one violating any of the provisions thereof. Section 25 provides for the immediate dismissal of such offenders. The subject matter of these sections is based on considerations of public policy in which the ability of the employee to do his

particular work is not a relevant factor. An employee could be most efficient in his field, and have the most excellent record, yet if he violated the mandate of the Legislature with reference to 'political activity' as defined in the statute, he would have to be dismissed and not be reinstated within a two year period. The two things have no relation to one another whatever. To adopt the view urged by the Commission would make a mockery of the salutory provisions of the last mentioned sections of the Act, and amount to a frustration of the legislative will therein expressed. On the other hand we cannot adopt the extreme view urged by the plaintiff, that a municipal employee violates the statute by merely running for office. There is no prohibition in the Act against any employee running for office. He may do so freely, just as any other citizen has a right to do. . . . What is prohibited is his 'serving' on a political committee, or participating actively in the 'management' of a political campaign and the like."

It must be understood that inasmuch as the Civil Service Act is a restriction on the normal constitutional rights of citizens, the rights of those who become city employes cannot be restricted beyond the express terms of the act. A city employe cannot be deprived of his right to participate in every conceivable kind of political activity, but the limitations in that regard are confined to the restrictions contained in the act itself and no more. These are, as pointed out, that he cannot serve on a political committee nor take an active part in political management or in political campaigns. There is nothing in the act that forbids a city employe from becoming a candidate for political office, so long as he does not serve on a political committee or take an active part in the political management or in political campaigns. However, if he violates any of the restrictive provisions of the act, he is

subject to dismissal as the act provides, and he cannot claim the right to be reinstated merely because he resigns from the political committee of which he was a member, or discontinues taking an active part in political management or in political campaigns.

It appears from the second amended answer of the civil service commission that seven of the remaining 27 employes became members of a political committee for the first time in the spring primary of 1950 and were not otherwise engaged in any political activity violative of the Civil Service Act. Apparently, when their attention was drawn to the impropriety of their election to a political committee, they resigned. In relation to these seven, plaintiff's counsel has advised the court that plaintiff does not press his bill. These seven are Boelter, Brimberry, Grant, Houser, Kuemmerle, McBride and Sydnor.

In addition to these seven there were four others, Barnes, Monaghan, Reinke and Wompierski, who, although they may have been elected to ward committes before 1950, apparently did little or nothing in the nature of political activity in connection therewith, and plaintiff's counsel has advised the court that plaintiff does not press his bill in relation to those last mentioned.

Plaintiff presses his bill against defendants so far as relates to the remaining 16 city employes, and the court is well satisfied after a review of the evidence disclosed before the commission that they were properly dismissed from the service for violation of the Civil Service Act, that they had been elected in violation thereof to ward committes, and their subsequent reinstatement by the commission was improper. A summary of the facts with relation to each of the 16 follows:

*James Baldino.*—Had been a member of a ward committee since 1936 and while such became a city

employe, and while such was again elected to a ward committee.

*S. John Bandera.*—Had been employed by the city since 1947, and was elected to a ward committee both in 1948 and 1950.

*Morris Butler.*—Was elected to a ward committee in the spring of 1950, and after testifying that he thereafter resigned, he refused to give any further information of his political activities on the ground that it might tend to incriminate him. This in itself was a conviction of violation of the act, since it provides for criminal prosecution for those who violate it, as pointed out, supra.

*William A. Clark.*—First elected to a ward committee in 1944, and reëlected every year until 1950.

*William J. Clark.*—Was elected to a ward committee in the spring of 1950, and there is some question whether he had been on a committee in previous years, but he also refused to testify on the ground that he might incriminate himself. What we have said in that respect in the case of Butler applies here.

*John Cook.*—Admitted that he had been elected to a ward committee a number of times.

*Robert Fritsch.*—Was elected to a ward committee prior to April 26, 1948, as proven by the fact that the secretary of the committee produced Fritsch's resignation from the committee so dated. This employe was elected again to a ward committee because the secretary produced another resignation from the committee dated May 16, 1950. This employe likewise refused to answer questions on the ground that it might incriminate him. What we have stated in the case of Butler applies here.

*William Hopson.*—Was elected to a ward committee in 1948 and 1950.

*Phillip Leshansky.*—Admitted he had been regularly elected to a ward committee since 1940.

*Thomas McCoy.*—Served on a ward committee prior to his last election thereto in 1950.

*John L. McCusker, Jr.*—Served on a ward committee prior to his last election thereto in 1950.

*Warren R. McGraw.*—Served on a ward committee prior to his last election thereto in 1950.

*William McMichael.*—Was elected to a ward committee in 1948 and 1950, after which he resigned. This employe likewise refused to answer questions on the ground it might incriminate him, and what we have stated in the case of Butler applies here.

*Eugene J. McWilliams.*—Was elected to a ward committee in 1950, and likewise refused to answer questions on the ground it might incriminate him. What we have stated in the case of Butler applies here.

*Nathan Udelson.*—Was elected to a ward committee in 1948 and 1950. This employe likewise refused to answer questions on the ground it might incriminate him, and what we have stated in the case of Butler applies here.

*William Worstall.*—Was elected to a ward committee in 1948 and in 1950, after which he resigned.

It is clear from the foregoing summary that the 16 employes last mentioned were guilty of violation of the Civil Service Act of 1919, by reason of their election to a political committee (in each case a so-called ward committee), because the act provides for the immediate dismissal of any employe "serving on a political committee". At the argument counsel for the commission raised the question, apparently without too much confidence, as to whether an employe could be said to be "serving" on a political committee by reason of his mere election thereto, and perhaps it had to be shown that he was otherwise "politically active". It is this confusion of thinking that misled the commission conducting the hearings in these cases into spending so much time for the taking of testimony as

to what each of the employes did in the realm of political activity in their respective wards and divisions. What the Civil Service Act plainly prohibits is an employe "serving on a political committee". The violation is committed when the employe is elected to and becomes a member of the committee, and "serving" on a committee means no more than being a member of the committee.

The violative nature of the act is not to be determined by the extent or degree of the employe's participation in the work of the committee, or on the extent to which he may be articulate thereon. The employe's election to such a committee and taking his place thereon, is a violation of the act, which requires his immediate dismissal thereunder. Now, when it comes to any alleged violations in the field of "political management or in political campaigns", the act itself provides that before there can be an effective violation by a city employe in that respect, it must be shown that the employe took an "active" part therein, but this does not apply to election to a "political committee".

We conclude, therefore, that the Civil Service Commission erroneously and without lawful authority reinstated the 16 city employes last above mentioned. Having been properly dismissed because they had been elected to and become members of political committees, they became under the statute "ineligible for reappointment within two years to any position in the service of (the) City".

There can be no complete and efficient public service without such regulatory provisions as are contained in the Civil Service Act which, it appears to us, have been honored more in the breach than in their observance over the years. This points up the fact that it is not sufficient to have good laws on the books, but what is required is public officials who will administer

the laws conscientiously, with intelligence, and according to their clear intendment. The Civil Service Act, no less than any other law, must be administered and executed in accordance with its plain terms if the legislative mandate, through which the will of the people is expressed, is to be observed.

### Decree Nisi

A decree nisi may be entered directing the Civil Service Commission to vacate and revoke its order reinstating the 16 city employes last above mentioned, and enjoining and restraining the city controller and the city treasurer from issuing warrants and signing checks on public funds for the payment of wages or salary to any of the 16 employes, and unless exceptions thereto are filed within 10 days after the entry of such decree nisi, the same may be entered as a final decree.